UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHRISTOPHER GONZALEZ**, | Civil No. 14-CV-1359-GPC (WVG) |
| Petitioner, | **REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS AND CERTIFICATE OF APPEALABILITY** |
| v. | |
| **DANIEL PARAMO *et al.*,** | |
| Respondent. | |

## I. <u>INTRODUCTION</u>

On June 3, 2014, Petitioner Christopher Gonzalez ("Petitioner"), a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254, challenging his conviction for attempted murder, assault with a deadly weapon, first degree burglary, and aggravated mayhem.[1]  (Doc. No. 1.) Petitioner claims that his federal constitutional rights were violated by ineffective assistance of counsel, cumulative error, and the erroneous admission of his confession.

---

[1] Petitioner was also convicted of simple mayhem.  However, on direct appeal, the California Court of Appeal found Petitioner's conviction for simple mayhem to be a lesser included offense of aggravated mayhem and vacated the conviction for simple mayhem.  (Respondents' Lodgment No. 6 at 5, 20-23.)

On July 29, 2014, Respondents Daniel Paramo and Kamala D. Harris ("Respondents") filed an Answer to the Petition ("Answer").   (Doc. No. 4.)   Respondents contemporaneously lodged relevant state court records with their Answer.  (Doc. No. 4.)  On October 17, 2014, Petitioner filed a Traverse.  (Doc. No. 10.)

This case is before the undersigned Magistrate Judge pursuant to S.D. Cal. Civ. R. 72.1(d)(4) for Proposed Findings of Fact and Recommendation for Disposition.  For the reasons discussed below, the Court recommends that the Petition be **DENIED** without prejudice.

## II. FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1) (West 2006); see also Parke v. Raley, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The following facts are substantially taken from the California Court of Appeal's opinion on Petitioner's direct appeal, affirming in part and reversing in part the judgment of the trial court.  (Respondents' Lodgment No. 6)[2].

> In mid-August 2009, Maria Gonzalez (Maria) and her teenage daughter Selina G. were awakened at approximately 4:00 a.m. by knocking at their front door.  It was [Petitioner] Christopher [Gonzalez], the son of Maria's former boyfriend Raymond Gonzalez (Ray). [Petitioner] was upset after fighting with his father.  Maria invited [Petitioner] inside.  About a half an hour later, Maria's son Robert Gonzalez (Robert) came home with victim Daniel Castillo (Daniel).[FN4]
>
> FN4.  Maria, Selina, and Robert are not related to [Petitioner].

---

[2] 28 U.S.C. § 2254(e)(1) (the state court's determination of the facts is presumed to be correct); see e.g. Dillard v. Roe, 204 F.3d 758, n.1 (9th Cir. 2001) ("the facts are taken from the opinion by the California Court of Appeal"); DePetris v. Kuykendall, 239 F. 3d 1057, 1059-61 (9th Cir. 2001)(quoting the California Court of Appeal's "recitation of facts").

Maria decided to walk [Petitioner] back to his father's house, which was only a few blocks away. Once back at his father's house, [Petitioner] and Ray had another fight. [Petitioner] then left with Maria to return to Maria's house. On the way back to Maria's house, they saw some tools on the ground, including a hammer and a crowbar. Maria recalled commenting to [Petitioner] about the tools as they walked. After Maria and [Petitioner] returned to Maria's house, Robert, Selina, and Daniel left to get something to eat. [Petitioner] stayed behind with Maria. Sometime after 6:00 a.m., [Petitioner] and Daniel went to a convenience store to buy alcohol. Robert, Daniel, Selina, and [Petitioner] then watched a movie.

At 6:30 a.m., Maria left for work. When she left everyone appeared to be enjoying the movie.

Five minutes after Maria left, Selina went to her bedroom to sleep, leaving the three men alone in the living room. [Petitioner] asked Daniel for a cigarette, then went outside.[FN5] Robert went to his room and fell asleep, leaving Daniel alone in the living room.

FN5. Robert was uncertain whether [Petitioner] left at 6:38 or 7:38 a.m., but he was certain it was 38 minutes past the hour.

A few minutes later, Selina returned to the living room after she heard noises outside. Recognizing that [Petitioner] was gone, Selina unlocked the front door for [Petitioner] and then returned to her bedroom. Inside her room, Selina heard someone outside opening the latch of the front gate. She went back to the living room and found Daniel looking out the window. Daniel told her that [Petitioner] had just returned. As she returned to her room, Selina heard the sound of the front door opening.

About five minutes later, from inside her room Selina heard sounds in the living room that she described as similar to the noise her dogs make when they jump off the ouch. When the noise continued, Selina went to the living room and found [Petitioner] standing behind the couch with his arm behind his back. [Petitioner] told Selina that Daniel was sleeping. Frightened, Selina returned to her room and locked the door. Selina first called her mother and then she called 9-1-1.

As Selina was speaking to the 9-1-1 operator, [Petitioner] knocked on the door and asked if he could use the telephone. Selina told 9-1-1 that [Petitioner] was banging on the door, then he began shaking the doorknob. When the banging stopped, Selina opened her door slightly and saw Daniel in the living room. His face was covered in blood. When asked,

14CV1359

Selina explained to the 9-1-1 operator that she thought Daniel had been hit by a weapon because "his head [was] all smashed," his eye was "completely cut," and his temple looked as if it was "falling off."

A witness saw [Petitioner] dispose of a hammer while [Petitioner] was running in a drainage ditch. Sheriff's deputies recovered the hammer, which Maria later identified as the same hammer she and [Petitioner] saw when out walking early in the morning. When the deputies arrested [Petitioner], he was sweating, breathing heavily, and wearing only boxer shorts. Deputies transported [Petitioner] to the sheriff's substation and placed a parole hold on him.

Daniel suffered a fractured jaw, cheekbone, skull, and nose. He underwent multiple surgeries on his face. At trial, his upper lip remained a little numb, his right eyelid did not feel right, and he had facial scars and a tracheotomy scar on his neck.

(Respondents' Lodgment No. 6 at 3-5.)

## III. PROCEDURAL BACKGROUND

### A. BENCH TRIAL AND DIRECT APPEAL IN STATE COURT

On September 21, 2010, the San Diego County District Attorney's Office filed a Third Amended Information charging Petitioner with one count of attempted murder (Cal. Penal Code §§ 664/187(a)), assault with a deadly weapon (Cal. Penal Code § 245(a)(1)), first degree burglary (Cal. Penal Code §§ 459 & 460), aggravated mayhem (Cal. Penal Code § 205), and simple mayhem (Cal. Penal Code § 203). (Respondents' Lodgment No.. 1 at 45-47.) The Third Amended Information also alleged that Petitioner inflicted great bodily injury upon the victim (Cal. Penal Code § 12022.7(a)), and that Petitioner personally used a deadly weapon, a hammer. (Cal. Penal Code § 12022(b)(1)). (Respondents' Lodgment No. 1 at 46.)

On September 23, 2010, the Honorable Patricia Cookson held a bench trial. (Respondents' Lodgment No. 2.) The trial court found Petitioner guilty of all charges and found all special allegations to be true. (Respondents' Lodgment No. 6 at 5.) On January 11, 2011, the trial court sentenced Petitioner to a determinate sentence of 9 years, followed by an indeterminate term of 14 years to life. (Id.)

14CV1359

On January 27, 2011, Petitioner filed a direct appeal of his conviction in the California Court of Appeal, Fourth Appellate District, Division One. (Respondents' Lodgment No. 3 at 12.) Petitioner claimed erroneous admission of his confession, multiplicious convictions, and sentencing error. Id. On October 29, 2012, the state appellate court held that Petitioner's confession was improperly admitted, but that the error was harmless beyond a reasonable doubt. (Respondents' Lodgment No. 6.) Specifically, the state appellate court determined that, while the trial court erred in admitting Petitioner's post-arrest confession into evidence because his confession was involuntary under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 64 (1996), the error was harmless beyond a reasonable doubt based in part on the determination that there was substantial evidence other than his confession to the police to support his conviction. (Respondents' Lodgment No.6, Doc. No. 4-16 at 8-19.) The state appellate court also found Petitioner's conviction for simple mayhem to be a lesser included offense of aggravated mayhem, and therefore vacated the simple mayhem conviction and ordered the trial court to correct the errors on the abstract of judgment.[3/] (Id. at 20, 23.) In all other respects, the state appellate court affirmed the judgment. (Id. at 24).

On November 29, 2012, Petitioner filed a petition for review in the California Supreme Court, and the petition was denied on February 14, 2013. (Respondents' Lodgment Nos. 7, 8.)

**B. HABEAS PETITIONS IN STATE COURT**

On June 2, 2013, Petitioner filed a petition for writ of habeas corpus in the San Diego Superior Court, claiming ineffective assistance of trial counsel for failing to investigate the "hammer evidence" and object to its admission, and ineffective assistance of appellate counsel for failing to raise those issues on appeal. (Respondents' Lodgment No. 9.) Petitioner also alleged that the cumulative effect of the errors during

---

[3/] The state appellate court directed the trial court "to amend the abstract of judgment accordingly." (Respondents' Lodgment No. 6 at 23.)

14CV1359

trial denied him due process.  (Respondents' Lodgment No. 9.)  On July 22, 2013, the San Diego Superior Court denied the habeas petition on the merits.  (Respondents' Lodgment No. 10.)

On August 22, 2013, Petitioner filed petition for a writ of habeas corpus in the California Court of Appeal, Case No. D064437, asserting the same claims of ineffective assistance of counsel and cumulative error.  (Respondents' Lodgment No. 11.)  On January 23, 2014, the appellate court denied the habeas petition on the merits.  (Respondents' Lodgment No. 14.)

On January 9, 2014, Petitioner filed a second petition for writ of habeas corpus in the California Court of Appeal, Case No. D065205, challenging the trial court's imposition of a fine.  (Respondents' Lodgment No. 15.)  The state appellate court denied the petition, citing In re Clark, 5 Cal. 4th 750, 783, 797-798 (1993). (Respondents' Lodgment No. 16.)  The court determined that the petition was untimely and did not set forth an exception to the procedural bar or allege good cause for the delay.  Id.  The court also noted that the petition completely lacked in evidentiary support.  Id.

On February 26, 2014, Petitioner filed two petitions for writs of habeas corpus in the California Supreme Court.  (Respondents' Lodgment Nos. 17, 19.)  One petition challenged the imposition of a fine, Case No. S216774 (Respondents' Lodgment No. 17), the other petition alleged ineffective assistance of counsel and cumulative error, Case No. S216775 (Respondents' Lodgment No. 19).  On April 30, 2014, the California Supreme Court denied both habeas petitions.  (Respondents' Lodgment Nos. 18, 20.) The petition challenging the imposition of a fine was denied with pinpoint citations to People v. Duvall, 9 Cal.4th 464, 474 (1995), and In re Dixon, 41 Cal.2d 756, 759 (1953).  (Respondents' Lodgment No. 18.)  The petition alleging ineffective assistance of counsel and cumulative error was denied with a pinpoint citation to In re Clark, 5 Cal.4th 750, 767-69 (1993).  (Respondents' Lodgment No. 20.)

14CV1359

### C. **HABEAS PETITION IN FEDERAL COURT**

On June 3, 2014, Petitioner filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court.  (Doc. No. 1.)  Petitioner asserts the same claims that he raised in one of his state habeas petitions, ineffective assistance of counsel and cumulative error.[4/]

## IV. **STANDARD OF REVIEW**

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act ("the AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336, 117 S. Ct. 2059, 2068 (1997).  Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.  28 U.S.C. § 2254(d); Early v. Packer, 537 U.S. 3, 8 (2002).  In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinary deferential review, inquiring only whether the state court's decision was objectively unreasonable.  See Yarborough v. Gentry, 540 U.S. 1, 4 (2003); Medina v. Hornung, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts.  See Bell v. Cone, 535 U.S. 685, 694 (2002).  The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably

---

[4/] Petitioner does not challenge the imposition of a fine in his instant Petition. Therefore, all further references to Petitioner's state habeas petition are to the petition asserting ineffective assistance of counsel and cumulative error.

14CV1359

applied those decisions to the facts of a particular case. Id. Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." See Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

Where there is no reasoned decision from the highest state court the claim was presented to, the Court "looks through" to the last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims. See Ylst v. Nunnemaker, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by Andrade, 538 U.S. at 75-76); accord Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. See Early, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" id., the state court decision will not be "contrary to" clearly established federal law. Id. Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." Andrade, 538 U.S. at 72.

## V. **DISCUSSION**

Petitioner raises four claims in his instant Petition. First, he argues that his trial counsel was ineffective for failing to object or move to exclude the hammer as evidence, and that his appellate counsel was ineffective for failing to bring that claim on direct appeal. Second, he contends that his trial counsel was ineffective for failing to subpoena a witness to testify, and that his appellate counsel was ineffective for failing to bring that claim on direct appeal. Third, Petitioner argues that the cumulative

14CV1359

effect of the errors during trial denied him due process.  Fourth, Petitioner contends that his constitutional rights were violated by the erroneous admission of his confession.

Respondents argue that Petitioner is procedurally barred from receiving relief for grounds one through three because the California Supreme Court denied the habeas petition by citing In re Clark, 5 Cal.4th 750, 767-69 (1993).  (Doc. No. 4-1 at 11.)  They assert that this citation represents a procedural bar that is based upon adequate and independent state law grounds.  Id.  They also argue that the appellate court reasonably applied Strickland v. Washington in rejecting Petitioner's claims of ineffective assistance of counsel, that Petitioner's cumulative error claim fails to present a federal question, and that the California Court of Appeal found the erroneous admission of Petitioner's confession to be harmless beyond a reasonable doubt.  Id. at 13, 16-18.

## A. PETITIONER'S CLAIMS ARE NOT PROCEDURALLY BARRED

The California Supreme Court denied Petitioner's state habeas petition based on a pinpoint reference to Clark.[5/]  Respondents contend that the citation "represents a procedural bar that is based upon adequate and independent state law grounds."  (Doc. No. 4-1 at 11.)  They argue the Clark court observed that "[i]t has long been the rule that absent a change in the applicable law or the facts, the court will not consider repeated applications for habeas corpus presenting claims previously rejected," or "newly presented grounds for relief which were known to the petitioner at the time of a prior collateral attack on the judgment."  (Doc. No. 4-1 at 11; citing Clark, 5 Cal.4th at 767.  In response, Petitioner argues that "regardless of just how many times a state court may deny a petition which contain [sic] a constitutional claim, the federal Court still have [sic] jurisdiction sufficient to review it."  (Doc. No. 10 at 5.)

Petitioner's claims of ineffective assistance of counsel and cumulative error were previously denied on the merits in the state appellate court, and were denied by the state supreme court with an order which stated: "The petition for writ of habeas corpus is denied.  (See In re Clark (1993) 5 Cal.4th 750, 767-769.)"  (Respondents'

---

[5/] In re Clark, 5 Cal. 4th 750, 767-69 (1993).

14CV1359

Lodgment No. No. 20.)  <u>Clark</u> discusses several procedural bars used by California courts.  <u>Clark</u>, 5 Cal. 4th 750.  The citation to pages 767-69 of the <u>Clark</u> opinion is a reference to a California state rule against repetitious and piecemeal litigation of claims.  <u>See</u> <u>Clark</u>, 5 Cal.4th at 767-69.

Respondents are correct that the pages of the <u>Clark</u> decision cited by the California Supreme Court here, pages 767-69, refer to the bar on piecemeal and successive petitions. (Doc. No. 4-1 at 11.)  They contend that California's rule against repetitious and piecemeal litigation constitutes an adequate and independent state procedural ground which precludes federal habeas review.  <u>Id.</u>  The case citations provided by Respondents in support of that argument, however, involve the untimeliness bar of <u>Clark</u>, not the successive bar.  <u>Id.</u> at 11-12, citing <u>Walker v. Martin</u>, 562 U.S. 307, 131 S.Ct. 1120, 1127 (2011)(involves the untimeliness bar of <u>Clark</u>), and <u>La Crosse v. Kernan</u>, 244 F.3d 702, 706 (9th Cir. 2001)("We are now presented with the issue of whether the 1996 application of California's untimeliness bar to a habeas petition alleging constitutional error can bar federal habeas corpus review).<u>6/</u>  Because Respondents have not shown that the specific <u>Clark</u> bar cited by the California Supreme Court is an adequate and independent bar, Respondents have not met their initial burden.  <u>See</u> <u>Thomas v. Hubbard</u>, 2013 WL 144904, at *2-3 (N.D. Cal. Jan. 11, 2013) (Respondent did not satisfy burden of demonstrating that <u>In re Clark</u> is an adequate state bar because the California Supreme Court's pin cite was not to a procedural bar on the basis of untimeliness, but instead was based on California's procedural rule on repetitious and piecemeal claims).  Accordingly, because Respondents have failed to satisfy their burden, Petitioner is not barred from bringing claims one through three in his instant federal habeas petition.

<u>6/</u> Respondents cite to page 704 of <u>La Crosse v. Kernan</u>, asserting "[f]or a state procedural rule to be 'independent,' the state law basis for the decision must not be interwoven with federal." (Doc. No. 4-1 at 11-12; citing <u>La Crosse</u>, 244 F.3d at 704.)

10

"Before we can apply AEDPA's standards, we must identify the state court decision that is appropriate for our review.  When more than one state court has adjudicated a claim, we analyze the last reasoned decision."  <u>Barker v. Fleming</u>, 423 F.3d 1085, 1091-92 (9th Cir. 2005), citing <u>Ylst</u>, 501 U.S. at 803-04 ("Since a later state decision based upon ineligibility for further state review neither rests upon procedural default nor lifts a pre-existing procedural default, its effect upon the availability of federal habeas is nil-which is precisely the effect accorded by the 'look-through' presumption."); <u>Koerner v. Grigas</u>, 328 F.3d 1039, 1053 (9th Cir. 2003)("A claim cannot be both previously litigated and procedurally defaulted; . . . When either ground is a possibility, the choice between them is wholly arbitrary.  It is not our role to make such a choice.")

Here, the last reasoned decision involving claims one through three is the appellate court order on Petitioner's state habeas petition, which denied the ineffective assistance of counsel claims on the basis that Petitioner had shown neither deficient performance nor prejudice under the standards announced in <u>Strickland v. Washington</u>. Although the appellate court did not specifically address Petitioner's cumulative error claim, it concluded that there was no merit to Petitioner's claim of alleged errors. Therefore, the Court finds the appellate court opinion to be an adjudication on the merits of claims one through three for AEDPA purposes, and not a denial of the claims on procedural grounds.  <u>Barker</u>, 423 F.3d at 1091-92; <u>Koerner</u>, 328 F.3d at 1049-53.

**B. <u>CLAIM ONE: NO INEFFECTIVE ASSISTANCE OF COUNSEL RELATED TO THE ADMISSION OF THE HAMMER</u>**

In his first claim, Petitioner contends that his trial counsel was ineffective for failing to conduct a reasonable pre-trial investigation, in violation of his Sixth and Fourteenth Amendment rights.  (Doc. No. 1 at 6.)  Specifically, Petitioner claims that trial counsel failed to challenge the admissibility of the hammer as evidence during his bench trial.  <u>Id.</u>  Petitioner claims that his appellate counsel was also ineffective in failing to raise this claim on direct appeal.  <u>Id.</u> at 8.

14CV1359

Petitioner raised his claim of ineffective assistance of counsel related to the introduction of the hammer as evidence in his habeas petition before the California Supreme Court.  That court denied the petition with a pinpoint citation to Clark, as discussed above.  Accordingly, this Court must "look through" to the state appellate court's decision denying the claim as the basis of its analysis.  Ylst, 501 U.S. at 805-06.  The state appellate court agreed with the trial court's rulings in its order denying the habeas petition, stating,

> In his petition, Gonzalez contends his trial counsel was ineffective by failing to object at trial to the admission of a hammer into evidence and by failing to object to the admission of the hearsay statements of the witness that saw him throw the hammer into a backyard.  Petitioner further contends his appellate counsel was ineffective in failing to raise these same issues on direct appeal.

> To establish ineffective assistance of counsel, Gonzalez must demonstrate deficient performance and prejudice under an objective standard of reasonable probability of an adverse effect on the outcome. (People v. Waldla (2000) 22 Cal.4th 690, 718.)  He does not meet this burden.

> Gonzalez in his petition does not specify why the hammer should have been excluded from evidence, nor do we perceive any basis to exclude it.  As discussed in the direct appeal, the hammer was clearly relevant in this case, as witness Maria Gonzalez (no relation to petitioner) testified she and petitioner saw the hammer along with other tools as they were walking to her house in the early morning on the day petitioner viciously attacked victim Daniel Castillo.  Daniel's injuries were consistent with blunt force trauma, and Maria's teenage daughter, Selina, testified that Gonzalez went outside shortly before the attack and after he returned, she heard noises, investigated and found Gonzalez standing behind the couch where Daniel had been laying, with Gonzalez's hand behind his back.  Gonzalez told Selina that Daniel was sleeping.  Shortly thereafter, after calling 9-1-1, Selina saw Daniel on the couch, his face covered in blood and his head "smashed."

//

//

//

//

//

//

//

14CV1359

Thus, even if trial counsel had objected to the admission of the hammer into evidence, the trial court would have overruled that objection, as the hammer was clearly relevant and admissible under Evidence Code section 352.[7]

(Respondents' Lodgment No. No. 14 at 2-3.)

Petitioner claims that trial counsel should have objected to and moved to exclude the hammer as the alleged weapon that Petitioner used to commit the crime. (Doc. No. 1 at 6.) He argues that, while the prosecution contended that Petitioner beat the victim in the face with a hammer that a Sheriff's Deputy later found in a yard close to the scene of the crime, the deputy confiscated the hammer into evidence without asking if the hammer belonged to the property owner. (Doc. No. 1 at 6.) Further, Petitioner argues, the hammer did not contain any DNA or fingerprints, and the prosecution failed to submit any physical evidence showing that the hammer was the weapon used in the attack. (Doc. No. 1 at 7.) Petitioner contends the prosecution instead used the deputy's testimony that a witness named Ikaika Santos saw a subject running through a drainage ditch and drop a hammer. Id.

Petitioner claims that the prosecution relied heavily upon the hammer during closing argument, stating, "I'm bringing this up because I get to the specific intent of aggravated mayhem. In this case I think one blow with the size of the weapon we have would likely be enough. [Petitioner] took what is an extremely large hammer 15 inches in length, very large heavy hammer." (Doc. No. 1 at 7; citing RT 240.) Petitioner notes the prosecution also argued that it "takes a very large hammer to a laying-down victim, what else could it be other than with the intent to disfigure and the intent to kill." Id; citing RT 241. Petitioner claims that if trial counsel had objected or made a motion to exclude the hammer, it is reasonably probable that the court would have excluded it as

---

[7] California Evidence Code Section 352 states, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

14CV1359

being prejudicial.  <u>Id.</u>  He argues that trial counsel's deficient performance was prejudicial, resulting in a life sentence conviction for premeditation and aggravation, and that appellate counsel was ineffective for failing to raise this claim on direct appeal. <u>Id.</u> at 7-8.

Respondents simply argue that the state court correctly concluded that counsel's performance fell within the wide range of constitutionally acceptable professional assistance. (Doc. No. 4-1 at 16.)  They argue that the state court correctly determined that Petitioner could not have been prejudiced by any assumed deficiency.  <u>Id.</u>

The clearly established United States Supreme Court law governing ineffective assistance of counsel claims is <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); <u>see</u> <u>Baylor v. Estelle</u>, 94 F.3d 1321, 1323 (9th Cir. 1996).  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court must consider two factors. <u>Strickland</u>, 466 U.S. at 687.  First, Petitioner must show that counsel's performance was deficient.  <u>Id.</u>  Deficient performance requires a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  <u>Id.</u>  Petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. <u>Id.</u> at 688; <u>United States v. Quintero-Barraza</u>, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential. <u>Strickland</u>, 466 U.S. at 689.  A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. <u>Id.</u> at 687.

The second prong of <u>Strickland</u> requires Petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.  The <u>Strickland</u> court stated that "there is no reason for a court deciding an ineffective assistance claim

14CV1359

to approach the inquiry in the same order or to even address both components of the inquiry if the [petitioner] makes an insufficient showing on one." Id. at 697.

However, in 2005, the United States Supreme Court stated in Rompilla v. Beard that in a situation where the state courts address one prong of the two-prong Strickland test for ineffective assistance of counsel, but not the other, federal courts apply AEDPA deference to the prong the state courts reached, but review the unaddressed prong de novo. Harris v. Thompson, 698 F.3d 609, 625 (7th Cir. 2012); citing Rompilla v. Beard, 545 U.S. 374 (2005) (de novo review where state courts did not reach prejudice prong). In 2011, the United States Supreme Court explained in Harrington v. Richter that it does not matter "whether or not the state court reveals which one of the elements in a multipart claim it found insufficient" because the relevant question is whether a "'claim,' not a component of one, has been adjudicated." Harrington v. Richter, 562 U.S. 86, 98, 131 S. Ct. 770, 178 L.Ed.2d 624 (2011). This language appears to directly conflict with that of Rompilla. See, e.g., Childers v. Floyd, 642 F.3d 953, 969 n.18 (11th Cir. 2001) (en banc) ("Language in [Richter], however, suggests that this portion of Rompilla may no longer be good law."). The Ninth Circuit has not yet resolved this issue. The Seventh Circuit has addressed the conflict by construing Richter to apply only where the state court decision is "unaccompanied by an explanation." Sussman v. Jenkins, 642 F.3d 532, 534 (7th Cir. 2011).

"In a federal habeas challenge to a state criminal judgment, a state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court. . ." Strickland, 466 U.S. at 698. Instead, "it is a mixed question of law and fact." Id, citing Cuyler v. Sullivan, 446 U.S. 335, 342 (1980). Federal habeas courts must defer to "state court findings of fact made in the course of deciding an ineffectiveness claim." Strickland, 466 U.S. at 698. The Strickland standard also applies to challenges to counsel's effectiveness on appeal. Smith v. Robbins, 528 U.S. 259, 285, (2000); Evitts v. Lucey, 469 U.S. 387 (1985); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

The first prong of the <u>Strickland</u> test, deficient performance, requires a showing that counsel's performance was "outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. The relevant inquiry under <u>Strickland</u> is not what defense counsel could have done, but whether counsel's choices were reasonable. <u>See</u> <u>Babbitt v. Calderon</u>, 151 F.3d 1170, 1173 (9th Cir. 1998). Judicial scrutiny of counsel's performance "must be highly deferential," and the court must guard against the distorting effects of hindsight and evaluate the challenged conduct from counsel's perspective at the time in issue. <u>Strickland</u>, 466 U.S. at 689; <u>see</u> <u>also</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."); <u>Wiggins v. Smith</u>, 539 U.S. 510, 523 (2003) (the first <u>Strickland</u> prong is a "context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time of that conduct."); <u>Karis v. Calderon</u>, 283 F.3d 1117, 1130 (9th Cir. 2002) (court may "neither second-guess counsel's decisions nor apply the fabled twenty-twenty vision of hindsight"). A petitioner bears the heavy burden of demonstrating that counsel's assistance was neither reasonable nor the result of sound strategy. <u>Murtishaw v. Woodford</u>, 255 F.3d 926, 939 (9th Cir. 2001), cert. denied, 535 U.S. 935 (2002); <u>see</u> <u>also</u> <u>Edwards v. Lamarque</u>, 475 F.3d 1121, 1126 (9th Cir.) (en banc), cert. denied, 522 U.S. 1009 (2007). A habeas petitioner bears the burden to overcome the presumption that, under the circumstances, the challenged action constituted competent representation. <u>Strickland</u>, 466 U.S. at 689.

In applying the prejudice prong of <u>Strickland</u>, the court must consider whether the defendant has shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>

Here, in the last reasoned state court decision, the California Court of Appeal denied Petitioner's ineffective assistance of counsel claim, reasoning that it did not

14CV1359

perceive any basis to exclude the hammer as evidence at trial. The court also stated, "...even if trial counsel had objected to the admission of the hammer into evidence, the trial court would have overruled that objection, as the hammer was clearly relevant and admissible under Evidence Code 352." (Respondents' Lodgment No. 14) (Doc. No. 4-24 at 3.) Petitioner argues that it was reasonably probable that, had trial counsel objected to or made a motion to exclude the hammer, the court would have excluded it as being prejudicial. (Doc. No. 1 at 7.)

This Court agrees with the reasoning of the California Court of Appeal. Petitioner provides no reason to exclude the hammer other than arguing that the deputy did not ask the owner of the property where the hammer was found if he owned the hammer. Possession and use, not ownership, was the relevant fact. Even if the deputy had established and testified about ownership, it would have done nothing to help Petitioner.

As noted by the state appellate court, the hammer was clearly relevant to this case for several reasons. First, Maria identified the hammer as the same tool that she and Petitioner saw on the ground the morning of the attack, and Maria recalled commenting to Petitioner about the tools as they walked. Second, the victim's injuries were consistent with trauma resulting from blunt force. Third, Selina testified that when she emerged from her bedroom to investigate the strange noises coming from the living room, she saw Petitioner standing with his arm behind his back near the victim as if he were hiding something. Fourth, Maria testified that shortly thereafter, she saw the victim on the couch, his face covered in blood and his head "smashed." Fifth, the deputy testified to statements made by a witness who saw a suspect running in a drainage ditch and throw a hammer into a backyard abutting the ditch, which police recovered. Although Petitioner also disputes the admissibility of the deputy's testimony, as discussed below, the appellate court noted that testimony by the witness who made those statements could have led to even more incriminating evidence against Petitioner, given that Petitioner was wearing only boxer shorts when police found him

14CV1359

because he had discarded his clothes, was breathing heavily as if he had been running, and a helicopter found him hiding behind a dresser in a backyard near the location of the hammer.

The Court agrees that any objection to the admission of the hammer would have been futile because it was clearly relevant under California Evidence Code 352. California Evidence Code Section 352 states, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." The Court concludes that the hammer evidence did not necessitate undue consumption of time, or create substantial danger of undue prejudice or confusion of the issues.

Moreover, due to the substantial evidence presented at trial other than the hammer, Petitioner has not established that counsel's failure to object or move to exclude the hammer resulted in prejudice under Strickland such that there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, or that the Court's confidence in the outcome is undermined. Strickland, 466 U.S. at 694; Fretwell, 506 U.S. at 372.

Finally, an "appellant's counsel's failure to raise an issue on direct appeal does not constitute ineffective assistance when the appeal would not have provided grounds for reversal." Wildman v. Johnson, 261 F.3d 832, 840 (9th Cir. 2001). The Court has explained that trial counsel's performance was not deficient and that Petitioner was not prejudiced by trial counsel's failure to object to admission of the hammer. More importantly, the hammer evidence was clearly relevant and its probative value was not substantially outweighed by any of the Section 352 factors. It was rightfully admitted as evidence in trial. Thus, raising this issue on direct appeal would not have provided grounds for reversal. Under the circumstances presented in this case, the Court cannot conclude that Petitioner's appellate counsel's choice not to raise this claim on direct appeal was deficient or unreasonable.

14CV1359

1    Petitioner has failed to show either deficient performance or prejudice. The state

2    appellate court's rejection of this claim was neither contrary to, nor an unreasonable

3    application of, clearly established Supreme Court law, nor was it based on an

4    unreasonable determination of the facts. Williams v. Taylor, 529 U.S. 362, 412-13, 120

5    S.Ct. 1495, 146 L.Ed.2d 389 (2000); 28 U.S.C. § 2254(d)(2). Petitioner is not entitled

6    to relief as to claim one.

### C. CLAIM TWO: NO INEFFECTIVE ASSISTANCE OF COUNSEL RELATED TO THE DEPUTY'S TESTIMONY

8        In claim two, Petitioner contends that his trial counsel was ineffective for

9    failing to conduct a reasonable defense, in violation of his Fifth, Sixth, and Fourteenth

10   Amendment rights. (Doc. No. 1 at 10.) Specifically, Petitioner claims that his trial

11   counsel failed to subpoena Santos, a witness whose statements were introduced without

12   affording Petitioner the opportunity for confrontation and cross-examination. Id.

13   Petitioner claims that his appellate counsel was also ineffective in failing to raise this

14   claim on direct appeal. Id. at 11.

15       Petitioner raised his claim of ineffective assistance of counsel related to the

16   deputy's testimony as to Santos' statements in his habeas petition before the California

17   Supreme Court. That court denied the petition with a pinpoint citation to Clark, as

18   discussed above. Accordingly, this Court must "look through" to the state appellate

19   court's decision denying the claim as the basis of its analysis. Ylst, 501 U.S. at 805-06.

20   The state appellate court agreed with the trial court's rulings in its order denying the

21   habeas petition, stating,

22       Gonzalez also did not receive ineffective assistance of counsel by his trial counsel's failure to object to the statements testified to by police made by a witness who saw a suspect running in a drainage ditch and throw a hammer into a backyard abutting the ditch, which police recovered. A court reviewing defense counsel's actions must be "highly deferential" and engage in a presumption that the challenged actions of counsel constitute sound trial strategy. Bell v. Cone, 535 U.S. 685, 698 (2002).

26       As noted, Gonzalez waived his right to a jury trial and proceeded with a bench trial. If defense counsel had objected to the statements by the witness, the prosecution likely would have called the witness who made the statements, which perhaps may have led to even more incriminating evidence against Gonzalez, given that when police found Gonzalez he was

wearing only boxer shorts after discarding his clothes. He was breathing heavy as if he had been running and a helicopter found him hiding behind a dresser in a backyard near the location of the hammer.

Assuming arguendo defense counsel had no tactical reason not to object to the statements made by the witness as testified to by police and the trial court would have ruled such statements inadmissible, the officer that testified at trial still could have testified he found a hammer in a yard near the location where Gonzalez was apprehended. In addition, once the hammer was found Maria later identified it as the same one she had seen earlier that morning near her house while walking with Gonzalez. Thus, it is not reasonably probable a different result would have been reached if defense counsel had objected to, and the trial court sustained that objection, the admission of the hearsay statement by the witness as testified to by police regarding seeing a suspect throw the hammer into the yard.

(Respondents' Lodgment No. No. 14 at 3-4.)

Petitioner claims that Defense counsel failed to object to statements made by the deputy that were prejudicially introduced in his testimony, and also failed to subpoena Santos, the witness that made the statements, for purposes of confrontation and cross-examination. (Doc. No. 1 at 10.) Petitioner argues that, had trial counsel subpoenaed Santos for confrontation, it is reasonably probable that his testimony would have been unreliable, as Santos never identified Petitioner as the individual that he saw throw the hammer. Id. at 11. Petitioner asserts that Santos would not have identified Petitioner as the person he saw because the subject was 50 yards away, running in the opposite direction, with his back to Santos the entire time. Id; citing RT 179-81. Instead of calling Santos to testify, Petitioner claims that the prosecution called on the deputy to testify as to what Santos saw. Id. He argues that Santos told the deputy he "saw a subject running through a drainage ditch and drop a hammer," and at no time after Petitioner's arrest did the deputy ask Santos to positively identify Petitioner. Id; citing RT 178. Petitioner argues that the prosecution used Santos' statements to conclude Petitioner's guilt, inferring that Petitioner was the individual that Santos had seen, and linking it to Maria's testimony that the hammer in court was the same one she and Petitioner had seen earlier that day. Id. Petitioner claims that, other than his involuntary confession, the prosecution's link from Santos' statements to Maria's testimony was their only claim to Petitioner's guilt of premeditation. Id.

14CV1359

Again, Respondents simply argue that the state court correctly concluded that counsel's performance fell within the wide range of constitutionally acceptable professional assistance. (Doc. No. 4-1 at 16.)  They argue that the state court also correctly determined that Petitioner could not have been prejudiced by any assumed deficiency.  Id.

This Court agrees with the reasoning of the California Court of Appeal.  If trial counsel had objected to the deputy testifying as to Santos' statements, the prosecution likely would have called Santos to testify at trial.  Santos would have been able to testify as to his statements made to the deputy, and there is a likelihood that his testimony could have led to even more incriminating evidence against Petitioner.

Petitioner argues that Santos' testimony would have been unreliable, especially considering that he never identified Petitioner as the individual he saw throw the hammer.  However, in its order denying Petitioner's state habeas petition, the trial court stated, "...it appears the witness, who Petitioner identified as 'Santos,' did identify Petitioner as the person who dropped the hammer in the drainage ditch..." (Respondents' Lodgment No. 10 at 3)(emphasis in original).  Moreover, there is a possibility that Santos would have been able to identify Petitioner in court as the individual he saw throw the hammer into the yard, thereby enhancing the damning nature of Santos' observations.

Petitioner contends that he was prejudiced by his counsel's failure to call Santos as a witness.  As noted by the appellate court, the outcome of Petitioner's trial would have been unaffected if Santos had testified.  The deputy would still have been able to testify that the hammer was found in a location close to where Petitioner was apprehended.  Maria would still have identified the hammer as the one she and Petitioner saw on the morning of the attack.  Selina would still have testified about Petitioner's behavior at her house immediately before and after the attack.

Finally, as discussed in claim one, an "appellant's counsel's failure to raise an issue on direct appeal does not constitute ineffective assistance when the appeal would not have provided grounds for reversal."  Wildman v. Johnson, 261 F.3d 832, 840 (9th

Cir. 2001).  The Court has explained that trial counsel's performance was not deficient and that Petitioner was not prejudiced by trial counsel's failure to subpoena Santos or object to the deputy's testimony as to Santos' statements.  Thus, raising this issue on direct appeal would not have provided grounds for reversal.  Under the circumstances presented in this case, the Court cannot conclude that Petitioner's appellate counsel's choice not to raise this claim on direct appeal was deficient or unreasonable.

The Court concludes that Petitioner has not established that counsel's failure to subpoena Santos or move to exclude the deputy's testimony as to Santos' statements prejudiced him under Strickland such that there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, or that the Court's "confidence in the outcome" is undermined.  Strickland, 466 U.S. at 694; Fretwell, 506 U.S. at 372.  Petitioner has failed to show either deficient performance or prejudice.  Accordingly, the state court's denial of this claim is neither contrary to, nor an unreasonable application of, clearly established Supreme Court law, and Petitioner is not entitled to relief as to this claim.  Williams, 529 U.S. at 412-13.

### D. CLAIM THREE: NO CUMULATIVE ERROR

Petitioner contends that he was denied due process by the combined effect of individually harmless errors which rendered the defense far less persuasive than it otherwise would have been.  He asserts that this is a violation of his rights under the Fifth and Fourteenth Amendments.  (Doc. No. 1 at 13.)  Respondents argue that the United States Supreme Court has not established the doctrine of cumulative error as a basis for habeas relief,[8/] yet concede that the Ninth Circuit has interpreted Chambers v.

---

[8/] To support this argument, Respondents cite Gillard v. Mitchell, a Sixth Circuit case that states, "While we have recognized that '[e]rrors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair,' Walker v. Engle, 703 F.2d 959, 963 (6th Cir.1983), the 'Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief,' Lorraine v. Coyle, 291 F.3d 416, 447 (6th Cir.2002) (italics added)."  Gillard v. Mitchell, 445 F.3d 883, 898

(continued...)

14CV1359

Mississippi, 410 U.S. 284 (1973), as clearly establishing the doctrine of cumulative error. (Doc. No. 4-1 at 16; citing Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007).) Further, Respondents argue that because there were no errors at Petitioner's trial other than one harmless error, there can be no cumulative error. Id.

Petitioner raised his claim of cumulative error in his habeas petition before the California Supreme Court. That court denied the petition with a pinpoint citation to Clark, as discussed above. Accordingly, this Court must "look through" to the last reasoned state court decision as the basis of its analysis. Ylst, 501 U.S. at 805-06. The California Superior Court and the California Court of Appeal both denied Petitioner's state habeas petition asserting cumulative error. (Respondents' Lodgment Nos. 10, 14.) The California Superior Court stated,

> Finally, Petitioner argues the cumulative effect of the errors in his case (i.e., erroneous admission of his confession and the two errors alleged above) warrants reversal. The court disagrees because Petitioner has not actually shown any error in the admission of the "hammer evidence" or Santos' statements. As for the erroneous admission of his confession, the Court of Appeal found the error harmless.

(Respondents' Lodgment No. 10 at 4.)

The Ninth Circuit has stated "[t]he Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting trial fundamentally unfair." Parle, 505 F.3d at 927 (citing Chambers, 410 U.S. at 298); see also Whelchel v. Washington, 232 F.3d 1197, 1212 (9th Cir. 2000). "The cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal." Parle, 505 F.3d at 927; see also United States v. Frederick, 78 F.3d 1370, 1381 (9th Cir. 1996) (stating that where no single trial error in isolation is sufficiently

---

8/(...continued)

(6th Cir. 2002). Respondents also cite Middleton v. Roper, 455 F.3d 838, 851 (8th Cir. 2006), an Eighth Circuit case that states, "We repeatedly have recognized 'a habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test.' Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir.)."

prejudicial to warrant habeas relief, "the cumulative effect of multiple errors may still prejudice a defendant"). Where "there are a number of errors at trial, 'a balkanized, issue-by-issue harmless error review' is far less effective than analyzing the overall effect of all the errors in the context of the evidence introduced at trial against the defendant." Frederick, 78 F.3d at 1381 (quoting United States v. Wallace, 848 F.2d 1464, 1476 (9th Cir. 1988)). Cumulative error warrants habeas relief only where the combined effect of the errors had a "substantial and injurious effect or influence on the jury's verdict." Parle, 505 F.3d at 927 (quoting Brecht, 507 U.S. at 637).

"Cumulative error applies where, although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors has still prejudiced a defendant." Jackson v. Brown, 513 F.3d 1057, 1085 (9th Cir. 2008) (quoting Whelchel v. Washington, 232 F.3d 1197, 1212 (9th Cir. 2000)). Under Ninth Circuit precedent, there cannot be cumulative error where fewer than two constitutional errors exist. Hayes v Ayers, 632 F.3d 500, 524 (9th Cir. 2011); United States v. Solorio, 669 F.3d 943, 956 (9th Cir. 2012).

As the California Superior Court correctly noted, there is no merit to any of Petitioner's claims of error. While the state appellate court determined on direct appeal that the trial court erred in admitting Petitioner's post-arrest confession into evidence because his confession was involuntary under Miranda, the state appellate court concluded that the error was harmless beyond a reasonable doubt based in part on the determination that there was substantial evidence other than his confession to the police to support his conviction. (Respondents' Lodgment No. No. 14.) The only other errors asserted by Petitioner are the claim that his trial counsel was ineffective because he failed to object to the admission of the hammer into evidence and to the deputy's testimony as to Santos' statement. (Respondents' Lodgment No.. No. 21). Petitioner also contends that his appellate counsel was ineffective for failing to bring these claims on direct appeal. As discussed above, the Court has determined that neither trial counsel, nor appellate counsel, were ineffective in their representation of Petitioner. The state appellate court correctly concluded that even if counsel had objected to the

admission of the hammer into evidence, the trial court would have likely overruled the objection due to the hammer's relevance and admissibility under California Evidence Code Section 352.  Further, the state appellate court correctly concluded that if trial counsel made a successful objection to the deputy's testimony as to Santos' statements, the prosecution likely would have called Santos to testify and Santos' testimony would not have changed the outcome of the trial.

Accordingly, as the only error at trial was determined to be harmless by the California Court of Appeal, Petitioner is not entitled to relief for his cumulative error claim.  Williams, 529 U.S. at 412-13.  Because no errors occurred, no cumulative error is possible.  Hayes v. Ayers, 632 F.3d 500, 523-24 (9th Cir. 2011) (stating that "[b]ecause we conclude that no error of constitutional magnitude occurred, no cumulative prejudice is possible").

**E. CLAIM FOUR: ERRONEOUS ADMISSION OF PETITIONER'S CONFESSION WAS HARMLESS BEYOND A REASONABLE DOUBT**

Petitioner claims his constitutional rights were violated by the erroneous admission of his confession. (Doc. No. 1 at 20.)  Respondents contend that this claim was presented to the state courts on direct appeal and the state appellate court determined that the erroneous admission of Petitioner's confession during the bench trial was harmless beyond a reasonable doubt.  (Doc. No. 4-1, at 18).

Petitioner raised his claim of erroneous admission of his confession in his direct appeal before the California Supreme Court.  (Respondents' Lodgment No. 7.) The state supreme court denied the petition without citation of authority.  (Respondents' Lodgment No. 8.)  Accordingly, this Court must "look through" to the state appellate court's decision as the basis of its analysis.  Ylst, 501 U.S. at 805-06.  In its ruling on Petitioner's direct appeal, the state appellate court made the following factual findings regarding the background relevant to this claim:

> Once at the sheriff's substation, Detectives Licudine and Navarro interviewed [Petitioner]. [Petitioner] initially asked if he could speak with his parole agent Michael Lum.  The detectives stated they needed to speak

14CV1359

with [Petitioner] first. They asked him some general intake questions. Detective Licudine then read [Petitioner] his <u>Miranda</u> rights. [Petitioner] stated he understood his rights and told the detectives he and Daniel had some problems because Daniel was "talking some stuff" to him.

As the detectives continued to question [Petitioner] about the incident, [Petitioner] unambiguously invoked his right to speak with an attorney. Detective Navarro replied, "No worries. No worries." Detective Navarro then asked [Petitioner] if he wanted to speak with his parole agent. Detective Licudine offered to leave the room if [Petitioner] wanted to speak with the parole agent. The detective told [Petitioner] that she (the detective) would not be able to speak with him if he invoked his constitutional rights. [Petitioner] responded, "Yeah, I, can talk to him [e.g., the parole agent]."

Agent Lum was at the station because the detectives asked him to arrange a parole hold on [Petitioner]. He spoke to [Petitioner] for about 10 minutes. During this time the detectives were not in the room.

The record shows Agent Lum encouraged [Petitioner] to cooperate with detectives and to tell the truth, and told [Petitioner], "[t]alking about your side of the story helps me out, [and] helps yourself out." The record further shows that when [Petitioner] expressed concern about going back to prison and getting the maximum punishment, Agent Lum stated, "[s]o help yourself out for yourself. Help yourself out. I don't want to write the report that says subject was uncooperative with the...investigating detectives. Parole agent recommends maximum in-custody time. I don't want to write that." Immediately after meeting with Agent Lum, [Petitioner] changed his mind and agreed to speak with the detectives without counsel present.

The record shows the detectives then returned to the interview room, re-read [Petitioner] his <u>Miranda</u> rights and he then spoke to the detectives. [Petitioner] told the detectives that Daniel provoked the attack because he called [Petitioner] a "half[-breed]."[FN7] [Petitioner] then went outside to "cool off," at which point he saw the hammer and decided to take it. When he returned to Maria's house, [Petitioner] said he walked up behind Daniel, who was lying on the couch, and hit him twice in the face with the hammer. [Petitioner] said that after the attack, he ran from the house and threw away the hammer and most of his clothes.

> FN7. Daniel's statement to [Petitioner] ostensibly was based on the fact one of [Petitioner's] parents was Mexican and the other was Caucasian.

26

14CV1359

[Petitioner] moved to suppress his post-invocation statements.[FN8]  The trial court denied that request, ruling (during the trial, before the recording of the interview was played) that [Petitioner] voluntarily waived his right to counsel and to remain silent.

> FN8. On this court's own motion, the record on appeal was augmented to include two related motions filed by [Petitioner] before trial, which sought in part to exclude the post-invocation statements he made to police after he invoked his Miranda rights and then changed his mind and spoke to the detectives without counsel present.   We also invited the parties to submit supplemental briefing on whether the trial court ruled on one or both motions and if so, on whether the issue was preserved on appeal, inasmuch as the augmented record shows the word 'vacated' was written on the first page of each motion.  We have read the parties' supplemental briefs, considered the augmented record and conclude, as do the parties, that [Petitioner] has preserved on appeal the issue of the constitutionality of his post-invocation statements to police.  [Petitioner] subsequently augmented the record to include the hearing transcript from March 18, 2010, which we have considered in this appeal.

(Respondents' Lodgment No. 6 at 2-3, 9-11.)

The state appellate court concluded that Petitioner's confession was erroneously admitted at trial because he was enticed into cooperating by an implied promise of leniency and therefore had not validly waived his right to silence. (Respondents' Lodgment No. 6 at 13.)   The court nevertheless concluded that admission of the confession was harmless beyond a reasonable doubt for several reasons.  Id. at 14; citing Chapman v. California, 386 U.S. 18, 24 (1967).  The state appellate court stated,

> Here, we conclude the admission of [Petitioner's] post-invocation statements was harmless under Chapman for the following reasons:
>
> First, during sentencing, the court, in response to a statement by [Petitioner's] mother regarding her concern over the violation of her son's Miranda rights, noted: '[I]f it's any conciliation to Mrs. Gonzalez [Petitioner's mother], my findings of beyond a reasonable doubt were based upon the defendant's actions and not so much his statements at all to the parole officer or any of those statements, but rather his actions.'  Thus, as trier of fact the record shows the trial court placed very little, if any, weight on [Petitioner's] unlawful confession as the basis for its findings in support of his convictions for attempted murder (count 1), first

14CV1359

degree burglary (count 3), and aggravated mayhem (discussed *post*, count 4).

> Second, we conclude the admission of [Petitioner's] confession was harmless because even excluding the unlawful confession we conclude there is sufficient admissible evidence in the record from a variety of 'disinterested reliable' witnesses to support his conviction. (See *People v. Cahill, supra*, 5 Cal.4th at p. 505.) Selina testified that just moments before the attack, she saw [Petitioner] standing behind the same couch where Daniel was laying. Selina saw [Petitioner's] arm behind his back, supporting the inference [Petitioner] was hiding something in his hand. Selina further testified she retreated to her room because she was afraid of [Petitioner], after he claimed Daniel was 'sleeping' on the couch. While on the phone with the 9-1-1 operator, Selina testified she heard additional noises coming from the living room. While still on the phone with the 9-1-1 operator, Selina opened her door slightly and saw Daniel bleeding profusely. Selina contemporaneously reported to the 9-1-1 operator that it appeared Daniel had been attacked with a weapon, given the severity of his injuries.

> Moreover, a witness told detectives he saw [Petitioner] dispose of a hammer while [Petitioner] was running in a drainage ditch. Detectives retrieved the hammer and Maria identified the hammer as the one she had seen earlier that morning while walking with [Petitioner].

> Third, we note from the record that immediately *before* [Petitioner] invoked his Miranda rights he told the detectives that he and Daniel were having some problems because Daniel was 'talking stuff' to him. This statement was admissible and could be properly considered by the trier of fact in determining guilt.

(Respondents' Lodgment No. 6 at 15-16.)

Federal district courts on Section 2254 habeas review must analyze harmlessness under the standard set forth in Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).  See Fry v. Pliler, 551 U.S. 112, 127 S.Ct. 2321, 2328 (2007) (stating that, "whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in Chapman," a federal habeas court "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).  Thus, Fry held that the Brecht standard is more deferential to state court decisions than AEDPA.  The Ninth Circuit has interpreted Fry as holding that "we need not conduct an analysis under AEDPA of whether the state court's harmlessness determination on direct review . . . was contrary to or an unreasonable application of clearly established federal law . . . we

apply the Brecht test without regard for the state court's harmlessness determination."[9/]
Pulido v. Chrones, 629 F.3d 1007, 1012 (9th Cir. 2010); see also Merolillo v. Yates,
663 F.3d 444, 454-55 (9th Cir. 2011).  Under Brecht, "the standard for determining
whether habeas relief must be granted is whether the . . . error 'had substantial and
injurious effect or influence in determining the jury's verdict.'"  Brecht, 507 U.S. at
623, 637 (quoting and adopting harmless error standard created in Kotteakos v. United
States, 328 U.S. 750, 776 (1946)).  The Brecht harmless error analysis "protects the
State's sovereign interest in punishing offenders and its 'good-faith attempts to honor
constitutional rights.'"  Calderon v. Coleman, 525 U.S. 141, 146 (1998) (per curiam)
(quoting Brecht, 507 U.S. at 635).

        This Court agrees with the California Court of Appeal that the erroneous
admission of Petitioner's confession was harmless beyond a reasonable doubt.  Here,
the admission of Petitioner's self-incriminating statements did not have a substantial
or injurious effect on the jury's verdict because of the substantial evidence of
Petitioner's guilt apart from the statements in question.  As the state court noted, the
finder of fact in this case expressly stated that it did not rely so much upon Petitioner's
confession.  At sentencing, Petitioner's mother expressed her belief that Petitioner's
Miranda rights had been violated.  The court responded: "[I]f it's any conciliation to

─────────────────

        [9/] On June 18, 2015, the United States Supreme Court issued an opinion in Davis
v. Ayala, __ U.S. __, No. 13-1428 (June 18, 2015), regarding the application of
harmless error analysis in Section 2254 habeas petitions governed by AEDPA.  The
Court held that the proper harmless error analysis for a claim which has been
adjudicated on the merits in state court requires application of both Brecht and AEDPA.
The Court stated, "When a Chapman decision is reviewed under AEDPA, 'a federal
court may not award habeas relief under [Section] 2254 unless the harmlessness
determination itself was unreasonable.'  Fry v. Pliler, 551 U.S. 112, 119 (2007)
(emphasis in original).  And a state-court decision is not unreasonable if 'fairminded
jurists could disagree on (its) correctness.'  Richter, supra, at 101 (quoting Yarborough
v. Alvarado, 541 U.S. 652, 664 (2004)). . . In sum, a prisoner who seeks federal habeas
corpus relief must satisfy Brecht, and if the state court adjudicated his claim on the
merits, the Brecht test subsumes the limitations imposed by AEDPA.  Fry, supra, at
119-120."

Mrs. Gonzalez, my findings of beyond a reasonable doubt were based upon the defendant's actions and not so much his statements at all to the parole officer or any of those statements, but rather his actions." (Respondents' Lodgment No. 6 at 15.)

Moreover, the evidence supporting Petitioner's conviction was substantial. Selina's testimony itself was sufficient to establish Petitioner's guilt beyond a reasonable doubt. Selina testified that just moments before the attack she saw Petitioner standing behind the same couch where the victim was laying. She saw Petitioner's arm behind his back, supporting the inference that Petitioner was hiding something in his hand. Selina further testified she retreated to her room because she was afraid of Petitioner, after he claimed the victim was sleeping on the couch. Selina testified she heard several noises coming from the living room, and while on the phone with the 9–1–1 operator, Selina opened her door slightly and saw the victim bleeding profusely. Selina contemporaneously reported to the 9–1–1 operator that it appeared the victim had been attacked with a weapon, given the severity of his injuries. (Respondents' Lodgment No. 6 at 12-13.)

Selina's testimony, along with the fact that a witness saw Petitioner dispose of the hammer, a deputy located the hammer near the location where Petitioner was apprehended, and Maria identified the hammer as the one she and Petitioner saw earlier that day, as well as Petitioner's properly admitted statement that he and the victim had argued, demonstrates that the erroneous admission of Petitioner's post-invocation confession was harmless beyond a reasonable doubt. Accordingly, Petitioner is not entitled to relief for claim four.

## VI. **RECOMMENDATION**

For the aforementioned reasons, the Court **RECOMMENDS** that Petitioner's Petition for Writ of Habeas Corpus be **DENIED** without prejudice. This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. Section 636(b)(1).

14CV1359

**It is ordered** that no later than __July 16, 2015__, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**It is further ordered** that any reply to the objections shall be filed with the Court and served on all parties no later than __July 30, 2015__.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS ORDERED.

DATED:  June 19, 2015

Hon. William V. Gallo
U.S. Magistrate Judge

14CV1359