UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christopher Gonzalez,<br><br>                                    Plaintiff,<br><br>v.<br><br>Daniel Paramo,<br><br>                                    Defendant. | Case No.:  14-CV-1359-GPC (WVG)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING IN PART PETITIONER'S REQUEST FOR CERTIFICATE OF APPEALABILITY** |

On June 3, 2014, Petitioner Christopher Gonzalez ("Petitioner"), a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254, challenging his state court conviction.  On June 24, 2015, the Magistrate Judge filed a Report and Recommendation Denying Petition for Writ of Habeas Corpus.  On June 3, 2015 Petitioner filed Objections.  For the reasons stated below, this Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** the Petition.

## PROCEDURAL BACKGROUND

### A.      BENCH TRIAL AND DIRECT APPEAL IN STATE COURT

On September 21, 2010, the San Diego County District Attorney's Office filed a Third Amended Information charging Petitioner with one count of attempted murder,

California Penal Code ("Penal Code") sections 664/187(a); assault with a deadly weapon, Penal Code section 245(a)(1); first degree burglary, Penal Code sections 459, 460; aggravated mayhem, Penal Code section 205; and simple mayhem, Penal Code section 203. (Lodgment No. 1 at 46-47[1]; ECF No. 4-3). The Third Amended Information also alleged that Plaintiff inflicted great bodily injury upon the victim, Penal Code section 12022.7(a) and that Petitioner used a deadly weapon, Penal Code section 12022(b)(1). (Id.)

On September 21-23, 2010, the state court held a bench trial. (Lodgment No. 2, ECF Nos. 4-6, 4-7.) The trial court found Petitioner guilty of all charges and found all special allegations to be true. (Lodgment 6 at 5, ECF No. 4-15.) On January 11, 2011, the trial court sentenced Petitioner to a determinate sentence of nine years, followed by an indeterminate term of fourteen years to life. (Id.)

On November 18, 2011, Petitioner filed a direct appeal of his conviction in the California Court of Appeal, Fourth Appellate District, Division One. (Lodgment No. 3, ECF No. 4-13.) Petitioner claimed erroneous admission of his confession, his conviction for simple mayhem should be vacated because it was a necessarily included offense of aggravated mayhem, and sentencing error. (Id.) On October 29, 2012, the state appellate court determined that the trial court erred in admitting Petitioner's post-arrest confession because his confession was involuntary under Miranda v Arizona, 384 U.S. 436 (1996). (Lodgment No. 6 at 8, ECF No. 4-15). However, the court found the error harmless beyond a reasonable doubt because the record contained substantial evidence, other than his confession, to support Petitioner's conviction. (Id. at 8-19.) The state appellate court also found Petitioner's conviction for simple mayhem was a lesser included offense of aggravated mayhem, and therefore vacated the simple mayhem conviction. (Id. at 20, 23.) The court also corrected the sentencing error in an amended abstract of judgment.

---

[1] The pages numbers are based on the CM/ECF pagination except trial court transcripts page numbers are based on the trial transcript pagination.

(Id. at 23-24.)

On or around November 29, 2012, Petitioner filed a petition for review in the California Supreme Court, which was denied on February 14, 2013.  (Lodgment No. 7, ECF No. 4-17; Lodgment 8, ECF No. 4-18.)

**B.     HABEAS PETITIONS IN STATE COURT**

On June 2, 2013, Petitioner filed a petition for a writ of habeas corpus in the San Diego County Superior Court claiming ineffective assistance of trial and appellate counsel for failing to object and move to exclude the "hammer evidence" as inadmissible and prejudicial.  (Lodgment No. 9, ECF No. 4-19.)  Second, Petitioner argued that trial and appellate counsel were ineffective for failing to object to hearsay statements of a witness who saw him throw the hammer into a backyard, and failing to subpoena the witness that made the statements to allow Petitioner to confront him.  (Id.)  Lastly, Petitioner alleged that the cumulative effect of the errors during the trial denied him due process.  (Id.)  On July 22, 2013, the San Diego Superior Court denied the habeas petition on the merits.  (Lodgment No. 10, ECF No. 4-20.)

On August 22, 2013, Petitioner filed a petition for a writ of habeas corpus in the California Court of Appeal asserting the same claims raised in the San Diego Superior Court.  (Lodgment No. 11, ECF No. 4-21.)  On January 23, 2014, the appellate court denied the habeas petition on the merits.  (Lodgment No. 14, ECF No. 4-24.)

On January 9, 2014, Petitioner filed a second writ of habeas corpus in the California Court of Appeal challenging the trial court's imposition of a fine.  (Lodgment No. 15, ECF No. 4-25.)  The state appellate court denied the petition, because the petition was untimely and did not set forth an exception to the procedural bar or allege good cause for the delay.  (Lodgment No. 16, ECF No. 4-26.)

On February 26, 2014, Petitioner filed two petitions for writ of habeas corpus in the California Supreme Court.  (Lodgment No. 17, ECF No. 4-27; Lodgment No. 19, ECF No. 4-30.)  One petition challenged the imposition of a fine [Case No. S216774]. (Lodgment No. 17, ECF No. 4-27.)  The other petition alleged the same claims raised

with the San Diego Superior Court and the Court of Appeal concerning two claims of ineffective assistance of counsel and cumulative error [Case No. S216775].  (Lodgment No. 19, ECF No. 4-30.)  On April 30, 2014, the California Supreme Court denied the petition challenging the imposition of a fine with pinpoint citations to People v. Duvall, 9 Cal. 4th 464, 474 (1995), and In re Dixon, 41 Cal. 2d 756, 759 (1953).  (Lodgment No. 18, ECF No. 4-28.)  On the same day, the California Supreme Court denied the second petition alleging two claims of ineffective assistance of counsel and cumulative error with a pinpoint citation to In re Clark, 5 Cal. 4th 750, 767-69 (1993).  (Lodgment No. 20, ECF No. 4-30.)

## C.   HABEAS PETITION IN FEDERAL COURT

On June 3, 2014, Petitioner filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court.  (Petition, ECF No. 1.)  Petitioner asserts the claims of ineffective assistance of counsel, cumulative harmless errors, and that erroneous admission of his confession violated his constitutional rights.  (Id.)  On July 29, 2014, Respondent filed an Answer.  (Answer, ECF No. 4-1.)  On June 19, 2015, the Honorable William V. Gallo filed a Report and Recommendation Denying Petition for Writ of Habeas Corpus ("R&R") and Certificate of Appealability. (R&R, ECF No. 12.)  On September 24, 2015, Petitioner filed Objections to Report and Recommendation and a Request for Certificate of Appealability.  (Objections, ECF. No. 18.)

## FACTUAL BACKGROUND

The Court gives deference to state court findings of fact and presumes them to be correct.  See 28 U.S.C. § 2254(e)(1); see also Parke v. Raley, 506 U.S. 29, 35 (1992) (state court findings are entitled to statutory presumption of correctness).  The following facts are taken from the California Court of Appeal's opinion on Petitioner's direct appeal, affirming in part and reversing in part the judgment of the trial court.  (Lodgment No. 6; ECF No. 4-16.)

> In mid-August 2009, Maria Gonzalez (Maria) and her teenage daughter Selina G. were awakened at approximately 4:00 a.m. by knocking at their front door.  It was Christopher, the son of

4

Maria's former boyfriend Raymond Gonzalez (Ray). Christopher was upset after fighting with his father. Maria invited Christopher inside. About half an hour later, Maria's son Robert Gonzalez (Robert) came home with victim Daniel Castillo (Daniel.)

Maria decided to walk Christopher back to his father's house, which was only a few blocks away. Once back at his father's house, Christopher and Ray had another fight and Christopher then left with Maria to return to Maria's house. On the way back to Maria's house, they saw some tools on the ground, including a hammer and a crowbar. Maria recalled commenting to Christopher about the tools as they walked.

After Maria and Christopher returned to Maria's house, Robert, Selina, and Daniel left to get something to eat. Christopher stayed behind with Maria. Sometime after 6:00 am, Christopher and Daniel went to a convenience store to buy alcohol. Robert, Daniel, Selina and Christopher then watched a movie. At 6:30 a.m., Maria left for work. When she left, everyone appeared to be enjoying the movie.

Five minutes after Maria left, Selina went to her bedroom to sleep, leaving the three men alone in the living room. Christopher asked Daniel for a cigarette, then went outside. Robert went to his room and fell asleep, leaving Daniel alone in the living room.

A few minutes later, Selina returned to the living room after she heard noises outside. Recognizing that Christopher was gone, Selina unlocked the front door for Christopher and then returned to her bedroom. Inside her room, Selina heard someone outside opening the latch of the front gate. She went back to the living room and found Daniel looking out the window. Daniel told her that Christopher had just returned. As she returned to her room, Selina heard the sound of the front door opening.

About five minutes later, from inside her room Selina heard sounds in the living room that she described as similar to the noise her dogs make when they jump off the couch. When the noise continued, Selina went to the living room and found Christopher standing behind the couch with his arm behind his back. Christopher told Selina that Daniel was sleeping.

5

Frightened, Selina returned to her room and locked the door. Selina first called her mother and then she called 9-1-1.

As Selina was speaking to the 9-1-1 operator, Christopher knocked on the door and asked to use the telephone. Selina told the 9-1-1 operator that Christopher was banging on the door, then he began shaking the doorknob. When the banging stopped, Selina opened her door slightly and saw Daniel in the living room. His face was covered in blood. When asked, Selina explained to the 9-1-1 operator that she thought Daniel had been hit by a weapon because "his head [was] all smashed," "his eye was "completely cut," and his temple looked as if it was "falling off."

A witness saw Christopher dispose of a hammer while Christopher was running in a drainage ditch. Sheriff's deputies recovered the hammer, which Maria later identified as the same hammer she and Christopher saw when out walking early in the morning. When the deputies arrested Christopher, he was sweating, breathing heavily and wearing only boxer shorts. Deputies transported Christopher to the sheriff's substation and placed a parole hold on him.

Daniel suffered a fractured jaw, cheekbone, skull and nose. He underwent multiple surgeries to his face. At trial, his upper lip remained a little numb, his right eyelid did not feel right and he had facial scars and a tracheotomy scar on his neck.

(Lodgment No. 6 at 6-8, ECF No. 4-16.)

## DISCUSSION

Petitioner raises four claims in his instant petition. First, he alleges that trial counsel was ineffective for failing to object or move to exclude the hammer as evidence, and that his appellate counsel was ineffective for failing to bring that claim on direct appeal. Second, he contends that trial counsel was ineffective for failing to object to hearsay statements of a witness who saw him throw the hammer into a backyard, and failing to subpoena the witness that made the statements, and that his appellate counsel was ineffective for failing to bring that claim on direct appeal. Third, Petitioner argues

6

that he was denied due process due to the cumulative errors of the trial court.  Lastly, he contends that the erroneous admission of his confession violated his constitutional rights.

**A.    REPORT AND RECOMMENDATION STANDARD OF REVIEW**

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  Because objections were made, the Court reviews the magistrate judge's findings and recommendations de novo.  28 U.S.C. § 636(b)(1)(C); United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

**B.    AEDPA STANDARD OF REVIEW**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a court will not grant a habeas petition with respect to any claim adjudicated on the merits by the state court unless that adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding."  28 U.S.C. § 2254(d); Early v. Packer, 537 U.S 3, 8 (2002).

A federal court may grant habeas relief under the "contrary to" clause if the state court applied a different rule than the governing law established by the Supreme Court, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts.  Bell v. Cone, 535 U.S. 685, 694 (2002).  The court may grant relief under the "unreasonable application" prong if the state court correctly identified the governing Supreme Court principle but unreasonably applied it to the facts of the case. Id.  Additionally, the "unreasonable application" prong requires the state court's application of clearly established federal law to be "objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A federal court uses the decision of the highest state court to make its habeas determination.  Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991).  However, if no reasoned decision from the highest state court exists, the Court "looks through" to the last

1    reasoned state court decision and presumes it provides the basis for the higher court's

2    denial of a claim or claims.  Id. at 805–06.  A state court need not cite Supreme Court

3    precedent when resolving a habeas corpus claim, "[s]o long as neither the reasoning nor

4    the result of the state-court action contradicts [Supreme Court precedent]."  Early, 537

5    U.S. at 8.

6    **C.    PETITIONER'S CLAIMS ARE NOT PROCEDURALLY BARRED**

7            Respondent first summarily argues that Petitioner is procedurally barred from

8    receiving relief for grounds one through three because the California Supreme Court

9    denied the habeas petition with a citation to In re Clark, 5 Cal. 4th 750, 767-69 (1993).

10   (Answer at 11, ECF No. 4-1.)  Respondent contends that Clark stands for the proposition

11   that "the court will not consider repeated applications for habeas corpus presenting claims

12   previously rejected," or "newly presented grounds for relief which were known to the

13   petitioner at the time of a prior collateral attack on the judgment."  (Id.) (citing Clark, 5

14   Cal. 4th at 767.)  Petitioner argues that "regardless of just how many times a state court

15   may deny a petition which contain [sic] a constitutional claim, the federal court still have

16   [sic] jurisdiction sufficient to review it."  (Traverse at 5, ECF 10.)

17           A federal court will not review a habeas petitioner's claims if the state court

18   decision denying relief rests on a state law ground that is independent of federal law and

19   adequate to support the judgment.  Walker v. Martin, 562 U.S. 307, 320 (2011), Coleman

20   v. Thompson, 501 U.S. 722 (1991); Harris v. Reed, 489 U.S. 255 (1989).  However,

21   ambiguous reference to procedural rules is insufficient to invoke the procedural bar.

22   Calderon v. United States District Court, 96 F.3d 1126, 1131 (9th Cir. 1996).  A state rule

23   is only adequate if it is "firmly established and regularly followed."  Id. at 1129.  A state

24   rule is independent if it is "not interwoven with the federal law."  Park v. California, 202

25   F.3d 1146, 1152 (9th Cir. 2000).  Respondent bears the initial burden to plead the

26   existence of an independent and adequate state procedural ground as an affirmative

27   defense.  Bennett v. Mueller, 322 F.3d 573, 585-86 (9th Cir. 2003).

28           Petitioner did not file an Objection on this issue.  However, the Court agrees with

8

the Magistrate Judge's finding that Petitioner is not procedurally barred.  The California Supreme Court denied Petitioner's ineffective assistance of counsel and cumulative error claims with an order which stated, "The petition for writ of habeas corpus is denied (See In re Clark (1993) 5 Cal. 4th 750, 767–769.)"  (Lodgment No. 20, ECF No. 4-30.)  Pages 767-769 addresses the issue of successive filings.  While Respondent argues that California's rule against repetitious and piecemeal litigation, also known as successive filings, constitutes an adequate and independent state procedural bar, the case citations provide by Respondent only recognize Clark's untimeliness bar as an independent state procedural bar.  (Answer at 11–12, ECF No. 4-1 (citing Walker, 562 U.S. 307 (2011) (holding that the timeliness bar in Clark is an independent state ground adequate to bar habeas corpus relief in federal court; and La Crosse v. Kernan, 244 F.3d 702, 706 (9th Cir. 2001).)  Because Respondents have not shown that the specific Clark bar cited by the California Supreme Court is an adequate and independent bar, they have failed to meet their initial burden.  See Bodnar v. Davis, No. 12–657–DSF (OP), 2014 WL 794575 at *19 (C.D. Cal. Feb. 26, 2014) (Respondent failed to meets its burden showing that In re Clark is an adequate state bar because the Supreme Court's pin cite was not a procedural bar on the basis of timeliness but was based on the procedural rule on successive filings).  Therefore, Petitioner is not barred from bringing his claims in the instant habeas petition.

## D.   CLAIM ONE: NO INEFFECTIVE ASSISTANCE OF COUNSEL RELATED TO THE ADMISSION OF THE HAMMER

Petitioner first claims that his trial counsel was ineffective for failing to object and move to exclude the hammer evidence.  (Petition at 6-8, ECF No. 1.)  Petitioner argues that trial counsel could have excluded the hammer as prejudicial because there was no evidence of Petitioner's ownership nor any physical evidence linking the hammer to the crime.  (Id.)  Petitioner further alleges the inclusion of the hammer was prejudicial because the prosecution extensively used the hammer throughout closing argument to show aggravated mayhem.  (Id. at 7:7–12.)  Respondent simply argues that the state court correctly concluded that counsel's performance fell within the wide range of

constitutionally acceptable professional assistance.  (Answer at 10:1–4, ECF No. 4-1.)

Petitioner raised this claim before the California Supreme Court.  (Lodgment No. 19, ECF No. 4-29.)  The California Supreme Court denied the petition without a reasoned opinion.  (Lodgment No. 20, ECF No. 4-30.)  Therefore, this Court must "look through" to the state appellate court's decision.  See Ylst, 501 U.S. at 805–06.  The state appellate court agreed with the trial court's rulings in its order denying the habeas petition.  (Lodgment No. 14 at 3, ECF 4-24.)  Petitioner failed to state why the hammer should have been excluded.  (Id. at 2.)  The appellate court found the hammer relevant because Maria Gonzalez testified that Petitioner and she saw the hammer on the morning of the attack.  (Id.)  Additionally, the victim's injuries were consistent with blunt force trauma.  (Id.)  Witness Selina testified that Petitioner went outside before the attack and after he returned, she heard noises, and found Petitioner standing behind the couch where Daniel had been laying, with his arm behind his back.   (Id.)  Petitioner told Selina that Daniel was sleeping.  (Id.)  Finally, after calling 911, Selina saw Daniel lying on the couch, "his face covered in blood and his head 'smashed.'" (Id.)  The appellate court found that even if trial counsel had objected, the trial court would have overruled the objection because the hammer was clearly admissible under Evidence Code section 352.[2]

The Magistrate Judge recommended denying the habeas petition because any objection to the hammer would have been futile.  (R&R at 18, ECF No. 12.) Additionally, due to the substantial evidence presented at trial other than the hammer, the Magistrate Judge found that Petitioner did not establish that counsel's failure to attempt to exclude the hammer at trial would have led to a different result.  (Id.)

In his Objections, Petitioner contends that the Magistrate Judge's Report and

_____

[2] California Evidence Code section 352 states, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Cal. Evid. Code § 352.

Recommendation "constitutes manifest error" in part because "[t]he Magistrate Judge presented no direct evidence that the hammer was used in the attack." (Objections at 2:13-15, ECF No. 18.)  Petitioner also contends that the Magistrate Judge based his findings on speculation.  (Id. at 3:8-9.)  He points to the lack of physical and forensic evidence on the hammer and the fact that blunt force trauma can be caused by a weapon other than a hammer to support this contention.  (Id. at 3:8-28.)  Petitioner further alleges that no one witnessed the attacks or could verify that Petitioner used a hammer in the assault.  (Id. at 17-28.)  Petitioner also argues that the police arrested him several blocks south of the hammer rather than near the hammer's location.  (Id. at 6:10.)  Finally, Petitioner also contends that the trial attorney's assistance was not acceptable because defense counsel encouraged petitioner to forgo a jury trial because of the confession, which was illegal and violated the Fourth Amendment.  (Id. at 2:20-24.)

A defendant claiming ineffective assistance of counsel ("IAC") must show both (1) deficient performance under an objective standard of reasonableness and (2) prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate deficient performance, "[t]he challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'"  Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (quoting Strickland, 466 U.S. at 687).  To demonstrate prejudice, the petitioner must show that "but for counsel's unprofessional errors," there is a reasonable probability "the result of the proceeding would have been different."  Strickland, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome"); see Richter, 131 S. Ct. at 792 ("The likelihood of a different result must be substantial, not just conceivable").  "Because failure to meet either [Strickland] prong is fatal to [an IAC] claim, there is no requirement that we 'address both components of the inquiry if the defendant makes an insufficient showing on one.'"  Gonzalez v. Wong, 667 F.3d 965, 987 (9th Cir. 2011) (quoting Strickland, 466 U.S. at 697); see Bell v. Cone, 535 U.S. 685, 695 (2002) ("Without proof of both deficient performance and prejudice to the defense . .

. the sentence or conviction should stand") (citation omitted).

This Court agrees with the Magistrate Judge's Report and Recommendation.  The burden of proof lies with Petitioner, not with the Magistrate Judge.  To satisfy the first prong of Strickland, Petitioner must prove that trial counsel's failure to object to the hammer under section 352 fell outside the range of reasonable competence.  However, trial counsel was within this range because a finding that the hammer  was used to commit the offense was not speculative but was supported by circumstantial evidence.  Maria identified the hammer as the same one that she and Petitioner saw on the ground the morning of the attack.  (Lodgment No. 2, Vol. 1, Tr. at 79:8–81:5, ECF No. 4-6.)  Selina stated that after she heard noises outside her room, she went out and saw Christopher standing with his arms behind his back, and when she asked Christopher where Daniel was, he told her Daniel was sleeping.  (Lodgment No. 2, No. 2, Vol. 2, Tr. at 155:15-156:16; 159:27-160:14, ECF No. 4-7.)   She called 9-1-1 when Petitioner started jiggled her locked door knob in her room.  (Id. at 164:21-28.)  After he stopped and appeared to have left, she went outside her room and saw Daniel bleeding and "it was like his skin was peeling off on the side." (Id. at 168:28-169:2–6, ECF No. 4-7.)  Officer Butcher testified that Santos, a witness, saw a suspect throw a hammer while running in a drainage ditch.  (Id. at 179:21-180:2; 13-19.)  The officer went with Santos to where he thought he saw the suspect throw the hammer, and saw a hammer laying in the yard.  (Id. at 182:22-26.)  A helicopter located Petitioner and deputies saw Petitioner kneeling down wearing only boxer shorts and breathing heavily.  (Id. at 197–198.)  Defense counsel cross-examined the deputy and asked whether he asked the owner of the property where the hammer was found to see if it was his hammer and asked whether there was any hair or blood on the hammer even though there was a lot of blood at the crime scene.  (Id. at 185:9-23.)  While defense counsel may not have objected to the admission of the hammer, he questioned whether the hammer in evidence was the weapon.  (Id. at 253:23-254:9.)  Therefore, trial counsel's failure to object to exclude the hammer was not deficient.

Furthermore, the trial court would have properly admitted the hammer into evidence where its probative value outweighed its prejudice under section 352.  As discussed above, Selina placed Petitioner alone in the room at the time of the attack.  (Id. at 136-171.)  Maria identified the hammer as the same one that she and Petitioner saw on the ground the morning of the attack.  (Lodgment No. 2, Vol. 1, Tr. at 79:8–81:5, ECF No. 4-6.)  While Petitioner argues that the police did not arrest him near the hammer's location, in reality the police found him only a few blocks in the opposite direction of the hammer.  (Objections at 6:10, ECF No. 18.)  Petitioner easily could have thrown the hammer, then turned and ran in the opposite direction.

Finally, "an appellant's counsel's failure to raise an issue on direct appeal does not constitute ineffective assistance when the appeal would not have provided grounds for reversal."  Wildman v. Johnson, 261 F.3d 832, 840 (9th Cir. 2001).  As explained above, trial counsel's performance was not deficient and counsel's failure to object did not prejudice Petitioner.  Moreover, the trial court properly admitted the hammer into evidence under the section 352 factors.  Therefore, raising the issue on appeal would not have provided grounds for reversal.  Therefore, appellate counsel's choice not to raise the claim on direct appeal was not deficient.

The state court's decision was not contrary to nor an unreasonable application of clearly established Supreme Court law.  See Bell, 535 U.S. at 694.  Therefore, this Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** habeas relief on claim one of the petition.

## E.   CLAIM TWO: NO INEFFECTIVE ASSISTANCE OF COUNSEL RELATED TO THE DEPUTY'S TESTIMONY

Petitioner next contends that trial counsel was ineffective for failing to object to hearsay statements by a deputy concerning a witness' statement that he saw Petitioner throw the hammer into a backyard, and failing to subpoena the witness that made the statements to allow Petitioner to confront him.  (Petition at 11:3, ECF No. 1.)  Petitioner argues that Santos could not have identified Petitioner because "the subject he had seen

was 50 yards away running in the opposite direction, having his back to Santos the entire time." (Id. at 11:7–10 (citing Lodgment No. 2, Vol. 2 at 179–81[3], ECF No. 4-7.) According to Petitioner, "[b]esides Petitioner's involuntary confession, prosecution having linked Santos' statements to Maria's testimony was their only claim to Petitioner's guilt of premeditation." (Id.)  Respondent simply argues that the state court correctly concluded that counsel's performance fell within the wide range of constitutionally acceptable professional assistance.  (Answer at 10:1–4, ECF No. 4-1.)

Petitioner raised this claim before the California Supreme Court.  (Lodgment No. 19, ECF No. 4-29.)  The California Supreme Court denied the petition without a reasoned opinion.  (Lodgment No. 20, ECF No. 4-30.)  Therefore, this Court must "look through" to the state appellate court's decision denying the claim as the basis of its analysis.  See Ylst, 501 U.S. at 805-06.  The state appellate court agreed with the trial court's rulings in its order denying the habeas petition.  According to the California Court of Appeal, in the bench trial, the prosecution would have called the witness had defense counsel objected to the deputy's statements which could have revealed further incriminating evidence "given that when the police found Gonzalez he was wearing only boxer shorts after discarding his clothes, he was breathing heavy as if he had been running and a helicopter found him hiding behind a dresser in a backyard near the location of the hammer." (Lodgment No. 14 at 3, ECF No. 4-24.)  The appellate court further found that even if defense counsel was deficient, his failure to object was not prejudicial because the officer still could have testified that he found the hammer near Petitioner and Maria would still have identified the hammer.  (Id. at 4.)

The Magistrate Judge found that Petitioner did not meet either prong of the Strickland analysis.  Trial counsel was not ineffective because Santos' testimony may have led to more incriminating evidence against Petitioner.  Further, the failure to call Santos was not prejudicial because the deputy could still have testified that the police

---

[3] The page numbers do not contain the assertion Plaintiff makes.

found the hammer located near petitioner, Maria would still have identified the hammer, and Selina would still have testified about Petitioner's behavior.  (R&R at 21, ECF No. 12.)

In his Objections, Petitioner claims that Santos was "the one witness that could have shed light on petitioner's innocence," and "was not called to testify on his behalf." (Objections at 7:14–15, ECF No. 18.)  Petitioner alleges that none of the witnesses called at trial saw the assault.  (Id. at 7:8–9.)  Petitioner claims that Santos gave no description of the subject and "[Santos] didn't suggest what race, hair color, height, etc." the subject was. (Id. at 8:2–3.)  Petitioner argues that "a defense lawyer of sufficient competence would have subpoenaed Santos to prove to the court that the petitioner was not the one he saw."  (Id. at 8:10-11.)  Additionally, Petitioner argues that the fact that the police found Petitioner in his boxers and breathing heavily does not lead to the conclusion that Petitioner was the one Santos saw throw the hammer.  (Id. at 8:21–14.)  Petitioner argues that the police did not find him near the hammer because "[P]etitioner was arrested several blocks away in the complete opposite direction of the Santos' sighting which was clearly demonstrated at trial by a big blow-up map."  (Id. at 9:13–17.)

This Court agrees with the Magistrate Judge's conclusion.  Trial counsel could have reasonably decided to not object to the admission of hearsay statements and not call Santos to avoid further incriminating testimony.  It could have further implicated Petitioner if Santos testified since the police found him breathing heavily, wearing boxers, and hiding a few blocks away from the hammer.

Even if trial counsel was ineffective in not objecting to hearsay statement of Santos and not calling him as a witness, the error was not prejudicial.  As discussed above, the deputy still would have testified that he found Petitioner near the location of the hammer. Further, Maria would still have testified that the hammer was the one she and Petitioner saw on the morning of the attack.  Finally, Selina would still have testified about Petitioner's behavior on the night of the assault.

Finally, as discussed in claim one, appellant's counsel's failure to raise an issue on

15

direct appeal does not constitute ineffective assistance of counsel when the appeal would not have provided grounds for reversal.  See Wildman, 261 F.3d at 840.  Because trial counsel was not deficient and the failure to subpoena Santos or object to the deputy's testimony did not prejudice Petitioner, raising the issue on direct appeal would not have provided grounds for reversal.

The state court's decision was not contrary to nor an unreasonable application of Supreme Court law.  See Bell, 535 U.S. at 694.  For the reasons stated above, this Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** habeas relief on Claim Two of the Petition.

## F.    CLAIM THREE: NO CUMULATIVE ERROR

Petitioner next claims he was "denied Due Process by the combined effect of individually harmless errors which, in combination, rendered the defense far less persuasive than it otherwise would have been, in violation of Petitioner's rights under the 5th and 14th Amendments."  (Petition at 13, ECF No. 1.)  Petitioner asserts three errors in his claim for cumulative error: 1) the trial court's decision to admit the involuntary confession, 2) the hammer's admission, and 3) defense counsel's failure to call Santos.  (Id. at 17:23–18:10.)  Petitioner argues that these three errors "rendered the defense far less persuasive than it otherwise would have been."  (Id. at 17:23–26.)

Respondent first argues that the United States Supreme Court has not established cumulative error as a basis for habeas relief.  (Answer at 16:11–12, ECF No. 4.)  However, Respondent acknowledges that the Ninth Circuit has interpreted Chambers v. Mississippi as clearly establishing that cumulative error may give rise to a due process violation.  (Id. at 16:12-13 (citing Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007).)  Respondent replies that no cumulative error exists because there were no errors at Petitioner's trial other than one harmless error.  (Id. at 17:22–27.)

Petitioner raised his cumulative error claim in his habeas petition before the California Supreme Court.  That court denied the petition without a reasoned decision.  Therefore, this Court must "look through" to the last reasoned state court decision as the

basis of its analysis.  See Ylst, 501 U.S. at 805–06.  Although cumulative error was raised in the petition for writ of habeas corpus with the Court of Appeal, (Lodgment No. 11 at 10-13, ECF No. 4-21), the Court of Appeal did not address the issue.  (Lodgment No. 14, ECF No. 4-24.)  Therefore, the Court looks at the California Superior Court's decision denying Petitioner's state habeas petition asserting cumulative error.  (Lodgment No. 10, ECF No. 4-20.)  The California Superior Court found that Petitioner failed to show that there was any error in the admission of the "hammer evidence" or Santos' statements and that the only error in the record was the involuntary confession's admittance, but found that error harmless.  (Lodgment No. 10 at 4, ECF No. 4-20.)  Therefore, the court denied the cumulative error claim.  (Id.)

The Magistrate Court also found no cumulative error.  The only error present was the admission of the involuntary confession, but the state appellate court determined that error was harmless beyond a reasonable doubt.  (R&R at 24-25, ECF No. 12.)

Petitioner argues that the Magistrate Court's Report is erroneous because it did not contain specific evidence to support the conviction.  (Objections at 10:21–27, ECF No. 18.)  Petitioner then alleges that six errors existed.  First, "Santos never positively identified the suspect nor gave any physical description of him.  Neither did he say that the suspect he saw was wearing boxer shorts."  (Id. at 11:2–4.)  Second, Petitioner alleges that he could not have used the hammer because there is no proof that Petitioner was the one running with the hammer.  (Id. at 11:6–7.)  Third, "[b]ecause there is no DNA, no blood, no fingerprints, no hair, or other evidence it would be highly unlikely that such evidence would simply disappear from the hammer or from petitioner."  (Id. at 11:18–21.)  Fourth, "Selina seeing petitioner holding his own hand behind his back does not prove he was holding a hammer.  Petitioner could have had anything or nothing."  (Id. at 11:25–26.)  Fifth, Petitioner alleges the police did not arrest him near the hammer's location, rather, they arrested him several blocks south.  (Id. at 12:10–12.)  Finally, Petitioner argues that the fact the police arrested him in boxer shorts does not prove he was the one whom Santos saw.  (Id. at 12:13–15.)  Petitioner argues that these were all

17

opportunities for trial counsel to attack the prosecution's case but counsel failed to do so. Petitioner alleges that Santos' testimony "would have disproven the prosecution's theory that petitioner was the one who retrieved the hammer in the original location." (Id. at 12:21–24.)  Petitioner cites two cases to support this argument.  The first is Harding v. Davis, 878 F.2d 1341 (9th Cir. 1989); the second is Riley v. Payne, 352 F.3d 1313 (9th Cir. 2003).

The Ninth Circuit has stated "[t]he Supreme Court has clearly established the combined effect of multiple trial court errors violates due process where it renders the resulting trial fundamentally unfair." Parle, 505 F.3d at 927 (citing Chambers, 410 U.S. at 298).  "The cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal." Id.; see also United States v. Frederick, 78 F.3d 1370, 1381 (9th Cir. 1996 (stating that where no single trial error in isolation is sufficiently prejudicial to warrant habeas relief, "the cumulative effect of multiple errors may still prejudice a defendant."). When there are multiple trial errors, "a balkanized, issue-by-issue harmless error review' is far less effective than analyzing the overall effect of all the errors in the context of the evidence introduced at trial against defendant." Frederick, 78 F.3d at 1381 (quoting United States v. Wallace, 848 F.2d 1464, 1476 (9th Cir. 1988)).  Cumulative error warrants habeas relief only when the combined effect of the errors had a "substantial and injurious effect or influence on the jury's verdict." Parle, 505 F.3d at 927 (quoting Brecht, 507 U.S. at 637).

This Court agrees with the Magistrate Judge's Report and Recommendation. Petitioner's first and second alleged errors in his Objections both relate to Santos' failure to identify Petitioner as the subject who threw the hammer.  As stated above, Santos' failure to testify or identify Petitioner was not error.  Petitioner's third error claim, that Petitioner could not have used the hammer in the attack because it did not have any DNA evidence, was also not error.  As discussed above, the lack of DNA evidence on the hammer did not provide reasonable grounds to exclude the hammer from evidence.

Petitioner's fourth claim, that Selina never saw Petitioner holding the hammer, was similarly not an error.  Selina's testimony placed Petitioner alone with the victim at the time of the attack with his hand behind his back.  (Lodgment No. 2, Vol. 2 at 156:6 - 159:3, ECF No. 4-7.)  For the fifth alleged error, the police found Petitioner several blocks away from the hammer, winded and out of breath, which circumstantially proved that Petitioner threw the hammer, and then turned and ran in the opposite direction.  Finally, while the fact that officers found Petitioner wearing only boxer shorts does not by itself prove that Santos saw Petitioner throw the hammer, the other circumstances surrounding Petitioner's arrest, as discussed above, supported the conclusion that Petitioner threw the hammer.  (Lodgment No. 2, Vol. 2 at 191, ECF No. 4-7.)  The last remaining error is the trial court's admittance of the involuntary confession.  The failure to exclude the involuntary confession was an error, but, as discussed below, the error was harmless.  Because the Petitioner may not base a claim for cumulative error on one harmless error, the Court must reject Petitioner's harmless error claim.

The cases cited by Petitioner do not require a different result.  In Harding, the Petitioner's attorney did not speak up during a motion for a directed verdict against his client, which the Ninth Circuit found "was so likely to prejudice Harding that the cost of litigating its effect is unjustified and prejudice is presumed."  Harding v. Davis, 878 F.2d 1341, 1345 (9th Cir. 1989).  However, as discussed above, trial counsel could have reasonably decided not to contest those issues to prevent the prosecution from introducing more incriminating evidence.  In Riley, the defense counsel failed to investigate and call a potential witness, and the Ninth Circuit held that when defense counsel fails to contact a potential witness, counsel could not "be presumed to have made an informed, tactical decision" not to call that person as a witness.  Riley v. Payne, 352 F.3d 1313, 1324 (9th Cir. 2003).  However, Petitioner here does not allege that trial counsel failed to investigate Santos, but rather that trial counsel failed to call Santos.  A decision to not call a witness after an investigation is a tactical decision made by counsel and does not give rise to a cumulative error claim.

14-CV-1359-GPC (WVG)

Petitioner also claims his appellate counsel was ineffective for failing to bring the cumulative error claim on direct appeal.  As discussed above, the Court has determined that appellate counsel was not ineffective in not contesting neither the hammer evidence nor the failure to subpoena witness Santos because the appeal would not have provided grounds for reversal.  See Wildman, 261 F.3d at 840.  The state court's decision was not contrary to nor an unreasonable application of clearly established Supreme Court law.  See Bell, 535 U.S. at 694.  For the reasons stated above, this Court **ADOPTS** the Magistrate Court's Report and Recommendation on the third claim.

## G.     CLAIM FOUR: ERRONEOUS ADMISSION OF PETITIONER'S CONFESSION WAS HARMLESS BEYOND A REASONABLE DOUBT

Lastly, Petitioner alleges that his conviction "resulted from an error of constitutional dimension which was not shown to be harmless beyond a reasonable doubt, in violation of Petitioner's rights under the 5th and 14th Amendments." (Petition at 20, ECF No. 1)  Petitioner claims that the state court of appeals incorrectly applied the harmless error analysis.  (Id.)  Petitioner argues that People v. Cahill held that the erroneous admission of a confession is harmless when "(a) when the defendant was apprehended by the police in the course of committing the crime, (b) when there are numerous, disinterested reliable eyewitnesses to the crime whose testimony is confirmed by a wealth of uncontroverted evidence, or (c) in a case in which the prosecution introduced, in addition to the confession, a videotape of the crime." (Id. at 21:18-26) (citing People v. Cahill, 5 Cal. 4th 478, 505 (1993)).  Petitioner contends that none of these circumstances existed.  (Id. at 21:26-27.)  Additionally, Petitioner argues that the prosecution focused on the confession to prove that Petitioner had the requisite intent for the offenses.  (Id. at 22:10-14.)  Petitioner did not file an objection to this claim although he raised this issue as one of the errors in the cumulative error claim.

Respondent argues that the confession's admittance into evidence was harmless because the fact finder did not rely upon the confession to find Petitioner guilty at trial. (Answer at 20:21-22, ECF No. 4-1.)  Additionally, Respondent claims the evidence

against Gonzalez, particularly Selina's testimony, was sufficient to convict Petitioner. (Id. at 21:1-3.)

Petitioner raised the claim of erroneous admission of his confession in his direct appeal before the California Supreme Court. (Lodgment No. 7, ECF No. 4-12.) The California Supreme Court denied the petition without citation of authority. (Lodgment No. 8, ECF No. 4-13.) Accordingly, this Court must "look through" to the state appellate court's decision as the basis of its analysis. See Ylst, 501 U.S. at 805-06. The state appellate court, on direct appeal, concluded that the confession was erroneously admitted at trial because officers coerced his cooperation by an implied promise of lenience and therefore he had not validly waived his right to silence. (Lodgment No. 6 at 13, ECF No. 4-11.) However, the court concluded that the confession's admission was harmless beyond a reasonable doubt. (Id. at 14 (citing Chapman v. California, 386 U.S. 18, 24 (1967).) The state appellate court noted that the trier of fact placed little weight on the confession itself when determining guilt. (Id.) Second, the appellate court found that sufficient evidence existed on the record to support his conviction beyond a reasonable doubt. (Id. at 16.)

Federal district courts analyze harmlessness under the Brecht standard, "under which an error requires reversal only if it 'had substantial and injurious effects or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (citing Kotteakos v. United States, 328 U.S. 750, 776 (1946)). The Brecht standard is more deferential to state court decisions than AEDPA. Fry v. Pliler, 551 U.S. 112, 120 (2007). The Ninth Circuit interpreted Fry as holding that courts "apply the Brecht test without regard for the state court's harmlessness determination." Pulido v. Chrones, 629 F.3d 1007, 1012 (9th Cir. 2010); see also Merolillo v. Yates, 663 F.3d 444, 454 – 55 (9th Cir. 2011).

This Court agrees with the Magistrate Court's and California Court of Appeal that the erroneous admission of Petitioner's confession was harmless beyond a reasonable doubt. The fact finder expressly stated, "[I]f it's any conciliation to Mrs. Gonzalez, the

mother, my findings of beyond a reasonable doubt were based upon the defendant's actions and not so much his statements at all to the parole officer or any of those statements, but rather his actions." (Lodgment No. 2, Vol. 2 at 279:10-15, ECF No. 4-7) Additionally, the three instances Petitioner cites from Cahill are examples, not an exclusive list. See Cahill, 5 Cal. 4th at 505 ("As these examples suggest, although in some cases a defendant's confession will be the centerpiece of the prosecution's case in support of a conviction, in many instances it will be possible for an appellate court to determine with confidence that there is no reasonable probability that the exclusion of the confession would have affected the result."). In this case, Selina's testimony itself, as discussed above, was enough to establish Petitioner's guilt beyond a reasonable doubt. Coupled with the deputy who located the hammer near the location where police arrested Petitioner, and Maria's identification as the hammer that she and Petitioner saw earlier that day, the evidence demonstrates that the involuntary confession was harmless beyond a reasonable doubt. Thus, the state court's decision was not contrary to nor an unreasonable application of clearly established Supreme Court law. See Bell, 535 U.S. at 694. Therefore, this Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** habeas relief this claim.

## H.   CERTIFICATE OF APPEALABILITY

Petitioner requested a Certificate of Appealability. (Dkt. No. 19.) "Where a district court has rejected the constitutional claims on the merits, the showing required under § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 483 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

In the instant case, the Court GRANTS Petitioner's Request for a Certificate of

14-CV-1359-GPC (WVG)

Appealabilty on the second claim of ineffective assistance of counsel related to the deputy's testimony and third claim of cumulative error.  However, Petitioner has failed to make a showing that reasonable jurists would find the Court's assessments of the remaining constitutional claims debatable or wrong, and DENIES Petitioner's Request for a Certificate of Appealability on those claims.

## CONCLUSION

This Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** and **DISMISSES** the Petition for Writ of Habeas Corpus and **GRANTS** Petitioner's Request for a Certificate of Appealabilty limited to the claims of ineffective assistance of counsel related to the deputy's testimony and cumulative error, and **DENIES** his Request for a Certificate of Appealability on the remaining constitutional claims.  The Clerk of Court shall close the case.

IT IS SO ORDERED.

Dated:  June 28, 2016

Hon. Gonzalo P. Curiel
United States District Judge

14-CV-1359-GPC (WVG)